IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TOMMIE JONES, JR., <br><br> Petitioner <br><br> VS. <br><br> DAVID FRAZIER, Warden, <br><br> Respondent | NO. 5:07-CV-353 (MTT) <br><br><br> PROCEEDINGS UNDER 28 U.S.C. §2254 <br> BEFORE THE U.S. MAGISTRATE JUDGE |

# RECOMMENDATION

Before the court is Tommie Jones Jr.'s petition seeking habeas corpus relief pursuant to the provisions of 28 U.S.C. §2254. Tabs #1 and #5. Therein, the petitioner sues Warden David Frazier asserting two (2) grounds for relief. After being served with this action, respondent Frazier filed a response to the petitioner's claims as well as numerous exhibits. Tabs #10 and #11. After careful consideration, the undersigned recommends that this petition be **DENIED**.

## PROCEDURAL HISTORY

Petitioner Tommie Jones, Jr. was convicted in Bibb County, Georgia on January 9, 2003, of two counts of armed robbery. He was sentenced on that same date to serve life in prison without parole. He appealed his convictions and sentence. They were affirmed on March 30, 2004. *Jones v. State*, 266 Ga. App. 679, 598 S.E.2d 65 (2004).

The petitioner filed a **state** habeas corpus petition in Telfair County, Georgia on February 22, 2005, challenging his convictions. An order denying state habeas corpus relief was filed on August 4, 2006. On February 26, 2007, the Georgia Supreme Court denied the petitioner's application for a certificate of probable cause to appeal the denial. Thereafter, on October 5, 2007, petitioner Jones filed the instant **federal** habeas corpus petition challenging his Bibb County convictions.

# FACTUAL BACKGROUND

In its decision on the petitioner's direct appeal, the Georgia Court of Appeals recited the facts of this case as follows:

> *The evidence shows that, just before noon on January 15, 2002, a SunTrust Bank in Macon was robbed. A man walked into the branch, placed a white bag on the counter in front of teller Tamiki Denson, and handed Denson a note. The note stated: "This is a bomb. Please comply or it will go off. If you do anything wrong, the whole building will come down. You have twenty-four minutes." The robber, who was holding an object that appeared to be a remote control, told Denson to fill the white bag with money or he would detonate the bomb. Denson immediately began placing money in the bag, which contained an orange Nike shoe box wrapped in gray duct tape.*
>
> *Believing that the box contained a bomb, Denson put approximately $ 6,000 in the bag. The robber informed her that she had a certain amount of time to get everyone out of the bank before the bomb went off, then fled, leaving the box on the counter. Denson reported the robbery, and the bank was evacuated. The police eventually determined that the box did not contain a bomb. Footage from the bank's security cameras showed that the robber was wearing a two-toned wind suit, a knit cap, and sunglasses.*
>
> *Earlier that same day, a man wearing similar clothing and holding an orange Nike shoe box entered Security Bank, which is located seven or eight miles from the SunTrust. The man walked past a uniformed police officer, looked around, asked a teller an "unusual" question, and left. Concerned that the man was "casing" the bank, a Security employee "logged" the frame number where the security camera showed the man. When the Security employee later heard about the SunTrust robbery, she informed police about the incident at her bank and showed authorities the video footage from the bank's security camera. Based on the video evidence from the two banks, authorities concluded that the same individual who robbed the SunTrust had earlier entered Security Bank with a Nike shoe box.*
>
> *Two weeks later, at approximately 2:00 p.m. on January 30, 2002, the Colonial Bank in Macon was robbed. A man wearing a Tommy Hilfiger cap entered the bank, informed teller Christine Dumas that he had a bomb in a box he was carrying, and instructed her to give him money. He also handed Dumas a note that stated: " 'This is a bomb. Don't be stupid or we all die. No one leave in [sic] twenty minutes.' " Dumas took the bomb threat seriously and gave the robber money from her cash drawer. The robber placed the cash in a bag, then fled after leaving the box on the counter.*
>
> *As the bank employees and customers evacuated to a restaurant next to the bank, Dumas and others spotted the robber in the passenger seat of a car exiting the restaurant parking lot. Someone from the bank recorded the car's tag number. Bank personnel reported the robbery and described the get-away car to Detective Willie Gordon, who happened to be eating lunch at the restaurant when the robbery occurred.*

*Gordon testified that he saw the car described by the bank employees parked in the restaurant parking lot while he was eating. He recalled that a man got out of the car's passenger seat, walked toward the back of the restaurant, then returned ten to fifteen minutes later. Just after the car left the restaurant parking lot, the bank employees reported the robbery to him.*

*Authorities discovered that the box left by the robber contained an automobile part and an Advance alarm clock, rather than a bomb. The clock had one Panasonic double-A battery inside it, but no battery cover. A short time later, police located the get-away car in back of a nearby house. Inside a trash can behind the house, police found a Family Dollar bag filled with an empty box for an Advance alarm clock, a plastic battery cover that fit the clock in the "bomb" box, and the wrapper for a four-pack of Panasonic double-A batteries that still held three batteries. Police also discovered a red Tommy Hilfiger cap in the trash can. Fingerprints lifted from the car, the Family Dollar bag, and the alarm clock box matched Jones' fingerprints.*

*Inside the car, officers also found fingerprints belonging to Bernard Dean, the vehicle's owner. Dean admitted that he drove Jones to Colonial Bank on January 30, 2002. According to Dean, Jones asked him for a ride to the Family Dollar store, and Dean agreed. When Jones got into the car, he had with him a plastic bag containing the "bomb" box used in the Colonial Bank robbery. Jones also was wearing a red Tommy Hilfiger cap. Dean took Jones to the Family Dollar, where Jones purchased a clock and batteries. At Jones' request, Dean then drove him to Colonial Bank. While Dean waited in the restaurant parking lot, Jones entered the bank with the box and the items he had purchased at the Family Dollar. Jones returned sometime later, told Dean to "pull off," and scooted down in the passenger seat. Dean testified that he did not know exactly what had happened in the bank, but he suspected that something was amiss.*

*Dean drove to a nearby house, parked in the backyard, and the two men went their separate ways. Before Dean left, however, he saw Jones with a bag of money, and he concluded that Jones had robbed the bank. Dean also observed Jones place something in a trash can near the parked car.*

*Dumas positively identified Jones at trial as the Colonial Bank robber. In addition, Dean and his girlfriend, who also knew Jones, reviewed security-camera footage from the Colonial Bank robbery. Both identified Jones as the robber in the photographs. They also recognized Jones as the suspicious individual carrying a Nike shoe box pictured in the January 15, 2002 photographs from Security Bank. The evidence further showed that, when arrested by police, Jones had on shoes that resembled the shoes worn by the SunTrust robber and the individual who entered Security Bank.*

*Based on this and other evidence, the jury found that Jones committed the Colonial Bank and SunTrust Bank armed robberies.*

*Jones,* at 680-82.

## NEED FOR AN EVIDENTIARY HEARING

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

After a review of the file, and in light of the fact statement cited above, the undersigned finds that an evidentiary hearing is not warranted in this case.

## LEGAL STANDARDS

Pursuant to the provisions of 28 U.S.C. § 2254(d), this court will not grant relief with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000).

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## **DISCUSSION**

In ground one of his **federal** petition, petitioner Jones asserts a claim of ineffective assistance of trial counsel. More specifically, he avers that his trial counsel failed to timely investigate alibi witnesses and failed to comply with the rules for securing alibi witnesses for trial. This resulted in these witnesses' testimony being excluded by the trial judge. According to the petitioner, had the jury heard this testimony, the verdict in this case would likely have been different.

The undersigned first notes that this claim is identical to one the petitioner raised on direct appeal and in his **state** habeas corpus petition. This claim was considered on the merits by the Georgia Court of Appeals in its decision affirming the petitioner' conviction and sentence. The **state** habeas corpus court also identified this specific claim, noted that it had already been considered on the merits, and then concluded that it was precluded from re-litigation in a **state** habeas corpus action.

Because the claim was considered on the merits by the state court, the undersigned must defer to that judgment unless one of two conditions is satisfied: the state-court adjudication resulted in a decision that (1) "was contrary to clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C.A. § 2254(d)(1).

After a careful review, the undersigned observes that, in adjudicating this claim, the state appellate court correctly identified and properly applied the appropriate standard as is set forth in the case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1] Consequently, the undersigned finds that the decision of the state appellate court was not contrary to nor an unreasonable application of Federal Law. Accordingly, pursuant to the provisions of 28 U.S.C. § 2254(d), petitioner Jones is not entitled to **federal** habeas corpus relief on his claim of ineffective assistance of counsel.

In his second and final ground for relief, petitioner Jones alleges that he was denied compulsory process and the ability to call certain witnesses. These claims rely upon the propriety of a trial court decision to exclude any testimony that may have been offered by the alibi witnesses which, based upon the petitioner's first ground, his counsel failed to timely investigate. A review of the record in this case reveals that these specific claims were also considered and decided adversely to the petitioner by a Georgia appellate court. In so doing, the Georgia Court of Appeals concluded its analysis by reasoning that, in view of "the nature of the proposed alibi testimony, as well as the overwhelming evidence that Jones robbed the Colonial Bank" even if the trial court's decision was erroneous, "the alleged error did not contribute to the jury's verdict and, therefore, was harmless." *Jones,* at (3).

Applying the same standard as was utilized in considering ground one, the undersigned is convinced that the Georgia appellate court's decision is consistent with U.S. Supreme Court opinions on the issue. *See Taylor v. Illinois*, 484 U.S. 400 (1988). As such, the undersigned concludes that the decision to exclude testimony that may have been offered by the petitioner's so-called alibi witnesses was neither contrary to nor an unreasonable application of Federal Law.

---

[1] This standard requires a party alleging ineffective assistance of counsel to show that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result thereof.

## CONCLUSION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the petition of Tommie Jones, Jr. seeking relief under the provisions of 28 U.S.C. § 2254 be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 23rd day of AUGUST, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE